24CA1287 Peo v Jorde 07-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1287
Douglas County District Court No. 23CR354
Honorable Ryan J. Stuart, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daren Allen Jorde,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE GROVE
Gomez and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 9, 2026

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Harvey A. Steinberg, Taylor Ivy, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Daren Allen Jorde, appeals the judgment of conviction entered upon a jury verdict finding him guilty of two counts of second degree assault.  We affirm.

## I.     Background

¶ 2     A reasonable jury could have found the following facts from the evidence presented at trial.

¶ 3     One evening in April 2023, Jorde and the victim, his wife, returned home after spending the day at a neighborhood party. They had both consumed alcohol at the party and continued drinking when they got home; the victim also took some hallucinogenic mushrooms.

¶ 4     After the couple got into an argument about prescription pills found in a shoebox, the victim went to bed on a couch.

¶ 5     Around 11 p.m., the victim called 911 and reported that Jorde had twice "choked her out" to the point where she lost consciousness.  When the police arrived, one of the officers observed that the victim's hair was disheveled and that she had "redness . . . and a little bit of swelling on her neck."  Jorde was arrested and later charged with two counts of second degree assault.

¶ 6     A few weeks after Jorde's arrest, the court received the first of several letters from the victim in which she apologized for giving a false statement to the officers who responded to her 911 call. In the letter, the victim explained that she had been "deceitful to protect [herself] on the night of the event" — an instinctual response that was the result of her childhood trauma. She also avowed that she had recommitted herself to a life of sobriety, repeatedly apologized for making false statements, and generally asked that the case against Jorde not go forward.

¶ 7     Jorde later went to trial — representing himself — on two counts of second degree assault. The victim testified but recanted most of the statements that she had made to responding officers, claimed that she did not remember what she initially reported, and denied that Jorde had strangled her.

¶ 8     A jury found Jorde guilty of both counts, and the district court sentenced him to two concurrent two-year terms of probation.

¶ 9     Jorde now appeals, arguing that the district court erred by (1) permitting "pervasive prosecutorial misconduct" that deprived him of a fair trial and (2) refusing to merge the two second degree assault convictions.

## II. Prosecutorial Misconduct

¶ 10 Jorde contends that the district court violated his right to a fair trial when it allowed the prosecutor to engage in misconduct at various points throughout the trial. Because a number of his prosecutorial misconduct claims are intertwined with arguments that the prosecutor improperly elicited inadmissible evidence and that the court plainly erred by admitting that evidence, we first consider whether any evidence was erroneously admitted before turning to whether the prosecutor committed misconduct.

### A. Evidentiary Claims

¶ 11 Evidentiary arguments underpin several of Jorde's prosecutorial misconduct claims. Specifically, he contends that, as a result of misconduct by the prosecutor, the district court erroneously (1) admitted improper bolstering testimony from the prosecutor's generalized expert on domestic violence; (2) admitted improper testimony regarding probable cause; (3) allowed the improper cross-examination of a lay witness; and (4) sustained "baseless objections" from the prosecutor, resulting in the exclusion of testimony from a defense expert witness. We address each of these arguments below.

### 1. Standard of Review

¶ 12 We review a district court's evidentiary rulings for abuse of discretion. *People v. Melillo*, 25 P.3d 769, 773 (Colo. 2001).

¶ 13 When an issue is unpreserved, reversal is required only if plain error occurred. *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005). Plain error is error that is "obvious and substantial" and has "so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (first quoting *People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002); and then quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo. 2003)).

### 2. Improper Expert Testimony

¶ 14 Jorde asserts that the district court erred by allowing the prosecution's expert witness to improperly bolster the credibility of the victim's initial statements to the police. We disagree.

### a. Additional Facts

¶ 15 Jennifer Walker testified on behalf of the prosecution as a generalized expert in domestic violence and victim and offender dynamics. Her testimony elaborated on the power and control dynamics between domestic violence victims and perpetrators. The

district court deemed this testimony relevant based in part on the victim's financial situation — she was unemployed and tasked with homeschooling the couple's son — and the fact she and Jorde had a young child. In reaching this conclusion, the court noted the factual similarities between this case and *People v. Cooper*, 2021 CO 69, which involved similar arguments regarding the admissibility of generalized expert testimony.

¶ 16    As relevant to Jorde's arguments on appeal, the prosecutor asked Walker about the following topics during her direct examination.

- Could power and control dynamics be at work when "someone maybe calls the police for help" but, later, "doesn't want to be part of the process," and if so, how? Walker explained that a domestic violence victim "may feel a great sense of responsibility for the abuse and behavior" because the offender may "blame the victim," "minimize [the offender's] behavior," or "deny" what occurred, or the victim may wonder about the consequences of reporting an incident.

- Had Walker ever seen domestic violence victims take the blame for an incident "by using — struggles with substance abuse or addiction?" Walker responded that "between 60 and 70 percent" of the domestic violence survivors she had worked with had misused drugs and alcohol, "[s]o it's not unusual."

- In her experience interacting with domestic violence survivors, had Walker found family and financial obligations to be considerations when a victim recanted statements or stayed in an abusive relationship? Walker confirmed that she had found this dynamic to be common in her thirty-seven years of experience working with domestic violence victims and noted that it was "partly why [she] testif[ies] as a [generalized] expert."

b.      Applicable Law

¶ 17      An expert may not give opinion testimony as to whether a witness is telling the truth on a specific occasion. *People v. Lafferty*, 9 P.3d 1132, 1135 (Colo. App. 1999). However, under CRE 702, an expert may testify concerning whether the victim's behavior or demeanor is consistent with that of typical victims of abuse. *See*

*People v. Fasy*, 829 P.2d 1314, 1317-18 (Colo. 1992). But if the generalized expert's testimony goes beyond a discussion of the typical general characteristics of a class of victims and instead touches on characteristics of an individual victim's credibility — those relevant to determining only whether that specific victim was credible — the testimony is impermissible. *See People v. Cernazanu*, 2015 COA 122, ¶ 21; *People v. Glasser*, 293 P.3d 68, 78 (Colo. App. 2011). In other words, "opinion testimony of general characteristics is admissible only if it '(1) relates to an issue apart from credibility and (2) only incidentally tends to corroborate a witness's testimony.'" *People v. Marx*, 2019 COA 138, ¶ 16 (quoting *People v. Relaford*, 2016 COA 99, ¶ 31).

c.   Analysis

¶ 18    We reject Jorde's assertion that the expert testimony described above "served no purpose" other than bolstering the victim's statements. To the contrary, as the prosecutor explained after the court asked about how Walker's testimony was "relevant to this case," Walker's testimony was offered for the purpose of educating the jurors regarding potentially counterintuitive behaviors commonly seen in domestic violence victims. *See Cooper*, ¶ 67.

7

Walker did not address the victim's credibility specifically, especially because she lacked any knowledge of the particular facts of the case. *See id.* at ¶ 97 (holding that a generalized domestic violence expert's testimony did not bolster a witness's credibility). Any bolstering that occurred was thus incidental and an insufficient basis to deny admission of the evidence. *See People v. Koon*, 724 P.2d 1367, 1370 (Colo. App. 1986).

### 3.    Probable Cause

¶ 19    Jorde argues that the district court improperly admitted testimony about probable cause. We decline to review this contention on the merits because we conclude that any error was invited or waived.

### a.    Additional Facts

¶ 20    In his opening statement, Jorde told the jury,

> There's a rule in Colorado where if there's a
> domestic violence call and two people are
> there, one person's got to go. (Indiscernible) it
> doesn't matter, somebody is going to go to jail
> if they think they have probable cause.

¶ 21    Later, Deputy David Johnson, one of the officers who responded to the victim's 911 call, testified about his observations when he arrived at the Jorde's home. At the conclusion of his

testimony, a juror submitted the following question: "If person A calls 911 and accuses person B of some assault, are you compelled by law to arrest person B regardless of whether you are convinced there was an assault?"

¶ 22    Jorde told the district court that he was "okay" with the question because "the law is the law."  The prosecutor characterized the juror's question as a "probable cause determination" that was "irrelevant in a trial" but did not object to asking it because Jorde had already referenced probable cause in his opening statement.

¶ 23    The court posed the juror's question to Johnson, and he responded as follows:

> [W]e take all the facts and circumstances of the case and the totality of everything.  If we have a crime and it's a domestic violence incident, then we shall arrest on that.  But we always make sure we have the facts and circumstances before we make that determination.

¶ 24    The prosecutor asked a single follow-up question, inquiring how police would respond if, after gathering "all the facts and circumstances," they believed there was no crime.  Johnson replied that if police do not have probable cause to charge someone after a full investigation, then they "don't charge someone."

## b.    Preservation

¶ 25    The doctrine of invited error captures the principle "that a party may not complain on appeal of an error that he has invited or injected into the case; he must abide [by] the consequences of his acts." *People v. Zapata*, 779 P.2d 1307, 1309 (Colo.1989).  The doctrine of invited error applies even to errors implicating constitutional rights.  *Id.*

¶ 26    Invited error is sometimes referred to as a strategic error. *People v. Perez-Rodriguez*, 2017 COA 77, ¶ 77.  But a "strategy" need not be competent or well planned.  *Id.*  Instead, it must merely be deliberate rather than inadvertent.  *Id.*  Therefore, an error is invited not only when a party requests the court take a particular action but also "where one party expressly acquiesces to conduct by the court or the opposing party."  *Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002).

## c.    Analysis

¶ 27    References to a "screening process," including references to probable cause evidence related to charging decisions, are generally improper because they suggest additional evidence exists that supports guilt but is unknown to the jury, while also revealing the

10

personal opinion of the witness as to the guilt of the defendant. *People v. Mendenhall*, 2015 COA 107M, ¶ 62. Here, however, even assuming that it was error for the court to allow questions that implicated the officers' probable cause determination, that error was invited by Jorde's express agreement to ask the juror's question. After the court read the proposed question, Jorde responded that he was "okay with [asking it]" and went on to say, "I think the law is the law." And even after the prosecutor pointed out that the question was "a probable cause determination and irrelevant in a trial," Jorde did not object.[1]

¶ 28 Under these circumstances, where Jorde expressly agreed to a juror question that touched on probable cause and did not change his position even after the prosecutor flagged the issue as improper, we can only conclude that his agreement to ask the question — and his silence when the prosecutor asked a single clarifying follow-up

---

[1] Although part of the transcript is marked "indiscernible," it appears that Jorde's response to the prosecutor's suggestion that the question called for irrelevant information referred back to the assertion that Jorde made in his opening statement — that there is "a rule in Colorado" that when police respond to domestic violence calls, "somebody is going to go to jail if they think they have probable cause."

question on the same topic — was deliberate and strategic. *See People v. Garcia*, 2018 COA 180, ¶ 12 ("We look to the record for evidence that [a defendant] argued in favor of the trial court's ruling or, by [his] words or conduct, expressly and strategically acquiesced to it."). Any error in allowing questioning that touched on the topic of probable cause was thus invited, and we decline to review it further.[2]

### 4. Improper Cross-Examination

¶ 29    Jorde contends that the district court erred when it admitted cross-examination from the prosecutor that amounted to expert testimony. Even assuming this line of questioning was improper, the court did not plainly err by failing to intervene and redirect the prosecutor sua sponte.

---

[2] Even if Jorde did not invite any error associated with the prosecutor's follow-up question, we cannot conclude that any error was plain. Jorde himself put the question of probable cause before the jury by raising the issue during his opening statement, and he expressly agreed to asking the juror's question, which touched on the same topic. Against this backdrop, Johnson's response to the prosecutor's single follow-up question does not cast serious doubt on the reliability of the judgment of conviction. *See Hagos v. People*, 2012 CO 63, ¶ 14.

### a. Additional Facts

¶ 30   Jorde's sister testified on Jorde's behalf at trial.  She testified that on the night of the incident, she was sleeping in the garage next to the living room.  She heard a door slam, walked into the living room, and saw the victim sitting on the couch crying and rubbing her neck while on the phone.  She noticed redness on the victim's neck but did not see any bruising.  Jorde's sister testified that, after the police left, the victim admitted that she had actually choked herself and had lied to the police because she thought she was going to go to jail.  The sister also said that, two months later, the victim had revealed to her that she had been on mushrooms that night.

¶ 31   On cross-examination, the prosecutor and Jorde's sister had the following colloquy:

> [Prosecutor]: [Y]ou're not a medical professional, are you?
>
> [Witness]: No, I am not.
>
> [Prosecutor]: You don't have any training in what signs or symptoms of strangulation would be, do you?
>
> [Witness]: I don't have any training, but I'm —

[Prosecutor]: No — okay.

[Witness]: — very intelligent.

[Prosecutor]: Okay.  So you're not aware that in over 50 percent of strangulations, there's no marks?  You have no idea whether that's true, that study, anything?

[Witness]: I guess not, sir.

[Prosecutor]: Okay.  You're not aware the — a sign or symptom of strangulation would be difficulty swallowing?  But that makes sense, right?

[Witness]: Sure.

[Prosecutor]: You're not an expert or a medical professional in signs or symptoms of strangulation, but losing consciousness, that would make sense if you're being strangled, right?

[Witness]: I would suppose, so.

[Prosecutor]: Feeling like you're going to puke, that would be a sign or symptom of strangulation?

[Defendant]: Objection.

[Witness]: That would also be a sign —

[Defendant]: Objection.

[The Court]: Hold on.  Hold on.

[Witness]: — of intoxication.

14

. . . .

> [Defendant]: Is [the prosecutor] now a medical professional?
>
> [The Court]: Well, that's — that's not an objection, so I'll let [the prosecutor] ask the question. Overruled.

### b. Applicable Law

¶ 32 A witness's cross-examination "should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." CRE 611(b). If a party stays within these bounds, a district court has broad discretion regarding the scope and limits of cross-examination. *People v. Ewing*, 2017 COA 10, ¶ 29. The court therefore has substantial discretion to limit cross-examination if the questioning is irrelevant, prejudicial, or confuses the issues before the jury. *People v. Saiz*, 32 P.3d 441, 449 (Colo. 2001).

¶ 33 Evidence must be relevant to be admitted. CRE 402. If a piece of evidence's relevancy hinges "upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." CRE 104(b).

¶ 34    In determining the admissibility of such conditionally relevant evidence, a district court should not evaluate and weigh the credibility of the proffered evidence by itself but rather should examine all the evidence from the standpoint of answering whether the jury could reasonably find by a preponderance of the evidence that the conditional fact has been established. *Burlington N. R.R. Co. v. Hood*, 802 P.2d 458, 468 (Colo. 1990). A fact is proved by a preponderance of the evidence if the jury, upon consideration of all the evidence, finds "the existence of the contested fact is more probable than its nonexistence." *Page v. Clark*, 592 P.2d 792, 800 (Colo. 1979) (citation omitted). The trial court should find the proffered evidence inadmissible only if, when considered in context, the evidence is manifestly insufficient to sustain a reasonable finding by the jury of the conditional fact. *Burlington N. R.R. Co.*, 802 P.2d at 468.

### c.    Analysis

¶ 35    We will assume without deciding that this line of questioning was improper because its relevancy depended upon the truth of unestablished facts. There was no evidence before the jury that "over 50 percent of strangulations" leave no marks, nor that signs

and symptoms of strangulation include "difficulty swallowing," "losing consciousness," or "feeling like you're going to puke." Nor were these questions necessary to undermine the credibility of Jorde's sister, who had already admitted that she had no medical training or knowledge of "the signs or symptoms of strangulation."

¶ 36 But even if the prosecutor's line of questioning was improper, it did not amount to plain error.[3] "Plain error is obvious and substantial. We reverse under plain error review only if the error 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" *Hagos v. People*, 2012 CO 63, ¶ 14 (citations omitted).

¶ 37 Jorde's sister testified that there was redness on the victim's neck. In other words, while she denied that there was bruising, she also did not claim that there was no mark at all. Thus, it is unlikely that the jurors would have found the prosecutor's claim that "over

---

[3] Although Jorde did attempt to raise an objection to the prosecutor's line of questioning, both parties characterize this alleged error as unpreserved on appeal. Accordingly, any argument that we should review this issue for harmless error is waived, and we instead apply plain error review. *See Moody v. People*, 159 P.3d 611, 614 (Colo. 2007) ("[A]rguments not advanced on appeal are generally deemed waived.").

50 percent of strangulations" did not result in marks to be particularly important. And the prosecutor's remaining questions were less problematic. Loss of consciousness can obviously be one result of strangulation, and in response to being asked whether strangulation can cause nausea, Jorde's sister pointed out that intoxication can have the same effect.

¶ 38 In any event, because photos of the victim's neck taken on the night of the incident were introduced into evidence, the jurors were able to assess the severity of the victim's injuries — and the likelihood that they were caused by strangulation — themselves. And the prosecutor's questions were "brief and isolated and did not constitute a significant part of the prosecutor's cross-examination or closing argument." *People v. Sommers*, 200 P.3d 1089, 1096 (Colo. App. 2008). Under these circumstances, we conclude that any error was not plain.

### 5. "Baseless" Objections

¶ 39 Jorde next claims that the district court erred when it precluded testimony from his expert witness based on the prosecutor's "baseless" objections. We disagree.

### a. Applicable Facts

¶ 40    Before trial, Jorde twice attempted to endorse "Darla Pearce MD," a nurse practitioner, as his expert witness in "Strangulation VS Self-Harm" and as his "Family Physician." But, in violation of the court's order regarding expert witness endorsement, Jorde did not provide Pearce's curriculum vitae and information about her testimony to the prosecution thirty-five days prior to trial. *See* Crim. P. 16(I)(d)(3), (II)(b)(2).

¶ 41    When Jorde attempted to qualify Pearce as an expert at trial, the prosecutor asked to conduct a voir dire of her qualifications. Pearce brought a copy of her curriculum vitae with her, and the prosecutor based his voir dire on that.

¶ 42    Following the prosecutor's voir dire, the court concluded that Pearce was unqualified to testify as an expert in strangulation but recognized her as an "expert in trauma." The prosecutor, however, continued to object to allowing Pearce to testify at all because Jorde had failed to provide proper notice. In response, the court — "out of fairness" — said that it would allow Pearce to testify if the prosecutor was able to find a rebuttal expert. The court decided to

take "a long lunch break" to give the prosecutor a chance to see if he could book a forensic nurse examiner as a rebuttal witness.

¶ 43 To give the prosecutor an idea of the testimony he would need to rebut, the court then asked Jorde to make an offer of proof concerning the relevance and substance of Pearce's anticipated testimony. Pearce outlined her testimony but then told the court that because she "had patients at 1 [p.m.]," she would need to get a better sense of when she would be called to testify. After the court said that the trial would likely reconvene at 12:45 p.m., Jorde said, "Darla, then it looks like I have wasted your time. I'm sorry." Pearce asked if that meant she was "done," and Jorde clarified that Pearce's unavailability would make her unable to testify. The court then excused Pearce.

b. Applicable Law

¶ 44 Under Crim. P. 16, subsections (I)(d)(3) and (II)(b)(2) address discretionary disclosures in criminal cases, providing that where the interests of justice would be served, the court may order the prosecution or defense to "disclose the underlying facts or data supporting the opinion in that particular case of an expert endorsed as a witness" and "may order the party calling that expert to provide

a written summary of the testimony describing the witness's opinions and the bases and reasons therefor." The intent of the rule is to allow the opposing party "sufficient meaningful information to conduct effective cross-examination under CRE 705." Crim P. 16(1)(d)(3), (II)(b)(2).

### c. Analysis

¶ 45 On appeal, it is unclear whether Jorde argues that the prosecutor's objection or the district court's remedy is the source of the alleged error. Regardless, we perceive no error under either framework.

¶ 46 First, the prosecutor's objection was not "baseless." In accordance with Crim. P. 16, the district court ordered the parties to disclose an expert's "written summary of the testimony" and curriculum vitae prior to trial. Crim. P. 16(I)(d)(3), (II)(b)(2). Jorde did neither and, instead, disclosed only a bare-bones description of Pearce's alleged expertise ("Strangulation VS Self-Harm") and identified her as the couple's "Family Physician." He also did not provide Pearce's curriculum vitae. We perceive no abuse of discretion in the court's finding that this notice was inadequate.

¶ 47    Second, even if the court's conditional delay of Pearce's admission was a sanction that amounted to an exclusion of defense's evidence, Jorde does not adequately develop any argument on appeal that the imposition of that sanction implicated his right to a fair trial. *See People v. Pronovost*, 773 P.2d 555, 558 (Colo. 1989). Because this argument is insufficiently developed, we do not address it. *See People v. Leverton*, 2017 COA 34, ¶ 65 ("[W]e do not address skeletal arguments . . . .").

### B.    Prosecutorial Misconduct in Closing Arguments

¶ 48    Jorde contends that the prosecutor committed misconduct amounting to plain error during closing arguments. We disagree.

### 1.    Applicable Law and Standard of Review

¶ 49    In reviewing claims of prosecutorial misconduct, we engage in a two-step analysis. First, we determine whether the prosecutor's conduct was improper based on the totality of the circumstances. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). Second, we consider whether such actions warrant reversal according to the proper standard of review. *Id.*

¶ 50    When, as the parties admit here, a defendant fails to contemporaneously object to the alleged misconduct, we review for

22

plain error. *Id.* at 1097. Prosecutorial misconduct constitutes plain error when it was obvious and "seriously affected the fairness or integrity of the trial." *Domingo-Gomez v. People*, 125 P.3d 1043, 1053 (Colo. 2005). "Only prosecutorial misconduct which is 'flagrantly, glaringly, or tremendously improper' warrants reversal." *Id.* (citation omitted).

### 2. Additional Facts

¶ 51    During closing arguments, the prosecutor told the jury the following:

- "What makes sense, what's credible, is that [the victim] was strangled twice by [Jorde,] and she was in fear for her life and she needed help in that moment."

- "[The victim] told the police what happened. That part was credible. All of that, everything she told the officers is credible, because that's what happened. That's what the evidence shows."

- "[The audio of the 911 call], [t]hat's credible testimony. That moment when [the victim] is in fear for her life and she's thinking about two things: that's she's going to die, and she's

thinking about her son in bed.  And that is credible evidence in this case."

### 3.    Analysis

¶ 52    "A prosecutor may not express a personal belief in the truth or falsity of testimony, but he may draw reasonable inferences about the credibility of witnesses based on the evidence." *People v. Sanders*, 2022 COA 47, ¶ 53, *aff'd on other grounds*, 2024 CO 33.

¶ 53    The statements quoted above were not an expression of the prosecutor's personal belief in the victim's claims but were instead reasonable inferences about how the evidence demonstrated that one version of the victim's story was more credible than the other. *See Wilson v. People*, 743 P.2d 415, 418 (Colo. 1987) ("[C]ounsel may properly point to circumstances which may raise questions or cast doubt on a witness's testimony, and . . . may also draw reasonable inferences from the evidence as to the credibility of witnesses . . . ."). To that end, the prosecutor contrasted the victim's initial statements to the police with her testimony at trial, noting that, to credit the victim's trial testimony, the jurors would need to believe that the victim remembered only those details of the

incident that served her narrative and would need to discredit the testimony of other witnesses.

¶ 54 This argument was entirely proper. Without expressing his own personal beliefs, the prosecutor simply asserted that the most reasonable inference the jurors could draw from the evidence was that the victim's statements to the police were more believable than her contradictory trial testimony.

## C. Cumulative Error

¶ 55 Finally, Jorde asserts that the cumulative effect of the prosecutorial misconduct and associated evidentiary errors discussed above deprived him of a fair trial. The doctrine of cumulative error, however, "requires that numerous errors occurred, not merely that they were alleged." *People v. Daley*, 2021 COA 85, ¶ 141. Because we have not found multiple evidentiary errors or multiple instances of prosecutorial misconduct, it follows that there was no cumulative error.

## III. Merger

¶ 56 Finally, Jorde contends that the district court erred when it declined to merge his two convictions because they were based on one criminal episode. We are not persuaded.

25

A.    Standard of Review and Applicable Law

¶ 57    We review de novo a claim that a defendant's conviction violates his constitutional protection against double jeopardy. *People v. Arzabala*, 2012 COA 99, ¶ 19; *see also People v. Denhartog*, 2019 COA 23, ¶ 73 ("Whether convictions for different offenses merge is a question of law that we review de novo."). Jorde's claim is preserved, and, regardless, "when a defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense, such a violation requires a remedy." *Friend v. People*, 2018 CO 90, ¶ 45 (citation omitted).

¶ 58    The Double Jeopardy Clauses protect defendants from multiplicity, meaning the charging of multiple counts and the imposition of multiple punishments for the same criminal conduct. *Arzabala*, ¶ 20.  We determine whether multiple punishments are permissible by looking to the legislatively prescribed unit of prosecution.  *People v. McMinn*, 2013 COA 94, ¶ 20.  The unit of prosecution is the manner in which a criminal statute allows a defendant's conduct to be divided into discrete acts for purposes of prosecuting multiple offenses.  *Id.*

¶ 59    In determining whether offenses are factually distinct, we look at all the evidence introduced at trial and consider (1) whether the acts occurred at different times and were separated by intervening events; (2) whether there were separate volitional acts in the defendant's course of conduct; and (3) whether certain factors — such as temporal proximity, the location of the victim, the defendant's intent as indicated by his conduct and utterances, and the number of victims — support a continuous course of action or separate acts. *People v. Lowe*, 2020 COA 116, ¶ 42. If we conclude that the convictions are not based on factually distinct offenses, then the convictions must merge. *Id.*

¶ 60    As relevant here, a person commits second degree assault when,

> [w]ith the intent to cause bodily injury, he or she applies sufficient pressure to impede or restrict the breathing or circulation of the blood of another person by applying such pressure to the neck or by blocking the nose or mouth of the other person and thereby causes bodily injury.

§ 18-3-203(1)(i), C.R.S. 2025.

## B. Analysis

¶ 61 Jorde argues that his two second degree assault convictions should be merged because they are not factually distinct. As we understand his argument, he claims that the evidence established that (1) the acts occurred at approximately the same time and were not separated by intervening events, and (2) there was no volitional departure in his course of conduct.

¶ 62 However, evidence at trial showed that Jorde strangled the victim to the point that she lost consciousness — then, after she regained consciousness and told him, "[P]lease stop, don't hurt me," he did the same thing again. That the victim regained consciousness and pleaded with Jorde to stop was an intervening event separating the two acts. Likewise, her appeal for Jorde to stop hurting her marked a volitional departure. *See People v. Valera-Castillo*, 2021 COA 91, ¶ 55 (assaults occurring close in time and in the same location constituted separate offenses when the defendant committed a second assault after the victim told him to stop attacking her).

¶ 63 Accordingly, like the district court, we conclude that the two second degree assault convictions should not merge.

28

## IV.   Disposition

¶ 64     We affirm the judgment of conviction.

JUDGE GOMEZ and JUDGE MOULTRIE concur.